UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JENNIFER GNACISKI,

        Plaintiff,

  v.

UNITED HEALTH CARE INSURANCE COMPANY,

        Involuntary Plaintiff,

  v.

WALMART, INC., WALMART STORES EAST LP,
and WALMART REAL ESTATE BUSINESS TRUST,

        Defendants.

Case No. 22-cv-159-pp

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL (DKT. NO. 10), DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF (DKT. NO. 24) AND DENYING LETTER REQUEST FOR HEARING (DKT. NO. 28)**

---

On January 11, 2022, the plaintiff filed a complaint in Fond du Lac County Circuit Court alleging that the defendants' negligence caused her to slip and fall at the defendants' store located in Fond du Lac, Wisconsin. Dkt. No. 1-2. Attorney Eric L. Andrews of Dunk Law Firm filed the complaint. Id. at 9. The defendants removed the case to federal court on February 9, 2021. Dkt. No. 1.

Forty-three days after removing the case, the defendants filed a motion to disqualify Andrews and Dunk Law firm, PLLC from representing the plaintiff in this case based on his recent previous employment with MWH Law Group LLC, the law firm representing the defendants. Dkt. No. 10. The court will grant that motion.

1

The defendants also have filed a motion for leave to file a supplemental brief in support of their motion to disqualify. Dkt. No. 24. Because the court is granting the defendants' motion to disqualify, the court will deny as moot the defendants' motion to file supplemental briefing.

I. **Additional Filings**

There are several filings that the court should address before considering the defendants' motions. These filings stem from the defendants' failure to file its supporting brief at the same time it filed its motion to disqualify. The plaintiff noted this failure in her brief in opposition. Dkt. No. 15 at 3, 5-6. Seizing on the error, the plaintiff argues in her brief in opposition that the defendants' motion fails to comply with the local civil rule and asks the court to dismiss the motion. Id. at 5-6 (citing Civil Local Rule 7(a)(1-2) (E.D. Wis.)).

The court noticed the error around April 14, 2022, the same day the defendants filed their brief in opposition. In response to the problem, the court's staff informed the defendants' counsel that the memorandum was missing and should have been filed. Dkt. No. 21. The defendants immediately filed the opposition brief, meaning that they filed the brief on April 14, 2022. Dkt. No. 18. Four days later, the plaintiff filed a letter—not a motion—seeking to strike the defendants' "untimely memorandum in support." Dkt. No. 19. The defendants responded a day later, dkt. no. 20, and on April 21, 2022, the court issued a text-only order giving the plaintiff until the end of the day on May 13, 2022 to file an amended memorandum in opposition to the motion if she wished, dkt. no. 21. The court also extended the defendants' deadline to reply. Id. Neither party took advantage of these opportunities.

This issue has been addressed. The parties have had the opportunity to fully develop their arguments on the matter of disqualification. The court will

2

not penalize the defendants for a simple filing error on a matter so significant as an attorneys' potential conflict of interest in opposing his former client.

## II. Defendants' Motion to Disqualify Counsel

### A. Motion (Dkt. No. 10)

The defendants assert that Andrews and Dunk Law Firm should be disqualified from representing the plaintiff because Andrews was employed with MWH Law Group as recently as December 2021, the month prior to his starting at Dunk Law Firm and filing this lawsuit on behalf of the plaintiff. Dkt. No. 10 at ¶1. According to the defendants, Andrews "represented Walmart in over 70 cases similar to the present case throughout his employment with MWH Law Group LLP." Id. The defendants say that they did not consent to Andrews's representation of the plaintiff and have asked him to withdraw as counsel, to no avail. Id. at ¶3.

The defendants argue that lawyers in Wisconsin are bound by the rules of professional conduct and that Andrews cannot comply with those rules while representing the plaintiff, because he previously represented Walmart at MWH "in a large number of personal injury claims before State and Federal Courts, including over two dozen slip and fall cases with facts and legal issues similar to those at issue in this case." Dkt. No. 18 at 1-2. The defendants explain that Andrews worked on seventy-eight Walmart cases over his three years with MWH, fifty-eight of which were premises liability cases. Id. at 19. The defendants argue that Andrews has continuing duties regarding confidentiality and conflicts under Wisconsin Supreme Court Rule (SCR) 20:1.9(a) and is prohibited from using information derived from previous representations to disadvantage a former client in another matter under SCR 20:1.9(c). Id. at 2.

3

The defendants argue that this case is substantially related to cases Andrews previously worked on in his former representation of Walmart. Id. at 8. In support, the defendants have provided a chart of recent slip and fall cases in Wisconsin in which Andrews participated, representing Walmart, and received privileged documents during that representation. Id. at 8-16. In at least one of these cases, Andrews received privileged documents from Walmart as recently as December 2021. Id. at 13.

The defendants also argue that the nature of the information to which Andrews had access, by itself, is sufficient to bar him from being adverse to Walmart. Id. at 18. They assert that he "acquired very specific, detailed non-public and non-discoverable knowledge of Walmart's settlement pay ranges and thresholds, litigation strategies, negotiation strategies, hierarchies in settlement authority, internal client concerns and internal client interest and motives." Id. They explain how he obtained this information—quarterly presentations hosted by Walmart, meetings with MWH and regular interactions with Walmart's in-house counsel. Id. at 19. The defendants summarize their position by asserting that Andrews "had access to documents, information, knowledge, and communications to which any other Plaintiff's lawyer (let alone a member of the community at large) would not have access." Id.

The defendants compare this case to several other cases outside of this district in which an attorney was disqualified based on his knowledge of confidential information. Id. at 20 (citing Persichette v. Owners Ins. Co., 462 P.3d 581, 590 (Colo. Sup. Ct. 2020); Holmes v. Credit Prot. Ass'n L.P. No. 17-cv-3995-WTL-MPB, 2018 WL 5777324 (S.D. Ind. Nov. 2, 2018); Exterior Sys. V. Noble Composites, Inc., 175 F. Supp. 2d 1112, 1117 (N.D. Ind. 2001); Estate of Jones by & Through Gay v. Beverly Health & Rehab Servs., 68 F. Supp. 2d

4

1304, 1310-11 (N.D. Fla. 1999)). They then attempt to anticipate and rebut the plaintiff's potential reference to Paragraph 3 of the ABA comment for Rule 1.9, which states "[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation;" they argue that Andrews acquired information and knowledge of Walmart's policies and practices beyond "general knowledge." Id. at 20-21. The defendants maintain that due to his ethical duty to zealously represent his current client (the plaintiff), Andrews would "arguably be shirking his ethical duties" if he did not use the information he obtained as Walmart's counsel. Id. at 21. They argue that if Andrews disqualifies himself but his firm continues to represent the plaintiff, it "might be unreasonable to expect" that Andrews would not share his knowledge with other attorneys from the firm and that the only option is to have both Andrews and Dunk Law disqualified as plaintiff's counsel. Id. (citing SCR 20:1.10).

Finally, the defendants cite a June 25, 2020, opinion from the Wisconsin State Ethics Bar that considered SCR 20:1.9(c). Id. at 21-22 (citing Wisconsin Formal Ethics Opinion EF-20-02: Lawyer Examining a Current or Former Client as Adverse Witness). This opinion highlighted the conflict of interest that arises when a lawyer represents a client in opposition to a former client. Id. at 22. According to the defendants, the opinion states that "SCR 20:1.9(c): '. . . prohibits the use, even without disclosure, of information relating to the representation of former clients that might disadvantage the former client even if the cases are not the "same," "substantially related" or involve material adversity.'" Id. (quoting EF-20-02). They argue that Andrews's duty to his former client conflicts with his duty to his present client, and that the conflict cannot be reconciled. Id.

5

B. <u>Plaintiff's Brief in Opposition</u> (Dkt. No. 15)

The plaintiff opposes the defendants' motion, arguing that Andrews's representation in in this matter is not substantially related to his previous cases representing Walmart. Dkt. No. 15 at 6. She asserts that the "playbook approach" advocated by the defendants "has been expressly rejected by the ABA in the most recent version of the model ethics rules adopted by Wisconsin in 2007." <u>Id.</u> The plaintiff's arguments are based on several of the comments to SCR 20:1.9. <u>Id.</u> at 7-8. She asserts that the comments "make clear that organizational clients are treated differently regarding conflicts of interest related to former clients, and that general knowledge of the client's policies and practices . . . ordinarily will not preclude a subsequent representation." <u>Id.</u> at 9.

The plaintiff also argues that Andrews and Dunk Law Firm should not be disqualified under Wisconsin's four-part "substantially related" test. <u>Id.</u> She compares the case to one from the District of Nevada, <u>Stevens v. Wal-Mart Stores, Inc.</u>, No. 2:17-cv-00970-JCM-PAL, 2018 WL 2766876 (D. Nev. June 8, 2018)). <u>Id.</u> at 10. According to the plaintiff, Wisconsin's SCR 20:1.9 is essentially identical to Nevada's NRCP 1.9, and the District of Nevada found that Walmart, which was the defendant in that case, had not satisfied its burden of establishing that the cases were substantially similar. <u>Id.</u> at 11-12. The plaintiff makes a similar argument about <u>Plein v. USAA Casualty Ins. Co.</u>, 463 P.3d 728 (Wash. Sup. Ct. 2020). <u>Id.</u> at 14. The plaintiff maintains that the cases cited by the defendants are distinguishable from this case <u>Id.</u> at 13-14.

Finally, the plaintiff argues that Wisconsin does not recognize the "playbook approach." <u>Id.</u> at 16. She defines the "playbook approach" as "provid[ing] that a lawyer is disqualified from taking a case against an

6

organizational client or corporation once they have the client's playbook." Id. She argues that the comments discussed previously reject such an approach, even though the defendants' argument is based on it. Id. She adds that the allegations in this case are not factually related to any of the cases Andrews previously handled at MWH and further discusses the ruling in Plein. Id. at 16-17.

  C. Governing Law

"[G]ranting a motion for disqualification has 'immediate, severe, and often irreparable . . . consequences' for the party and disqualified attorney. Watkins v. Trans Union, LLC, 869 F.3d 514, 519 (7th Cir. 2017) (quoting Freeman v. Chi. Musical Instrument Co., 689 F.2d 715, 719 (7th Cir. 1982)). "Disqualifying a lawyer immediately deprives the losing party from the 'representation of his choice' and disrupts the litigation." Id. "In sum, 'disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary . . . [because it] destroy[s] a relationship by depriving a party of representation of their own choosing.'" Id. (quoting Freeman, 689 F.2d at 721). See also, Nelson v. Green Builders, Inc., 823 F. Supp. 1439, 1444 (E.D. Wis. 1993) (noting that although disqualifying counsel may serve to protect one attorney-client relationship, it eradicates the other by denying a party the representation it chose).

That said, "the duty of confidentiality represented in the Rules of Professional Conduct, like the Code of Professional Responsibility that came before them, is fundamental to the profession and the relationship between lawyer and client." Id. "Courts have a duty to safeguard the privacy of the

7

attorney-client relationship and in doing so to 'maintain public confidence in the legal profession' and to protect 'the integrity of the judicial proceeding.'" Id.

"Lawyers representing clients in federal courts must follow federal rules but most 'federal courts use the ethical rules of the states in which they sit.'" Id. (quoting Huusko v. Jenkins, 556 F.3d 633, 636 (7th Cir. 2009)). The federal standard "may be informed by multiple sources, including state ethical rules." Silicon Graphics, Inc. v. ATI Techs., Inc., 741 F. Supp. 2d 970, 980 (W.D. Wis. 2010) (citing In re Snyder, 472 U.S. 634 (1985)). "Since the ethical codes adopted by both the Wisconsin Supreme Court and the Court of Appeals for the Seventh Circuit are based on the ABA Model Rules of Professional Conduct, the standards applicable to disqualification motions in both forums are essentially identical." Callas v. Pappas, 907 F. Supp. 1257, 1260 (E.D. Wis. 1995) (citing Powell v. Adams, 763. F. Supp. 406, 407 (E.D. Wis. 1991)).

The applicable Wisconsin Supreme Court Rule is SCR 20:1.9, Duties to former clients. That rule reads:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in a writing signed by the client.
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
> > (1) whose interests are materially adverse to that person; and
> > (2) about whom the lawyer had acquired information protected by sub. (c) and SCR 20:1.6 that is material to the matter; unless the former client gives informed consent, confirmed in a writing signed by the client.
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information to the representation except as these rules would permit or require with respect to a client.

https://www.wicourts.gov/supreme/sc_rules.jsp.

ABA Model Rule 1.9 is identical to SCR 20:1.9 except in its internal references to other ABA Model Rules and in in any place in which it refers to written consent; while the Wisconsin rule requires consent "confirmed in a writing signed by the client," the ABA Model Rule requires consent "confirmed in writing." https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_9_duties_of_former_clients/.

"In interpreting the Rules of Professional Conduct, federal courts may rely on the specific guidance offered in the commentary." Watkins, 869 F.3d at 519 (citing Nix v. Whiteside, 475 U.S. 157, 166 (1986); Strickland v. Washington, 466 U.S. 668, 688 (1984); United States v. Williams, 698 F.3d 374, 386 (7th Cir. 2012)).

Comment 2 to SCR 20:1.9 indicates that

> The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

https://www.wicourts.gov/supreme/sc_rules.jsp.

9

The comments also define the phrase "substantially related." Comment 3 to SCR 20:1.9 provides:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

https://www.wicourts.gov/supreme/sc_rules.jsp.

The <u>Watkins</u> court explained that

> Rule 1.9 clarified and narrowed the contours of an older federal common-law rule for attorney disqualification referred to as the "substantial relationship test." The Model Rules of Professional Conduct, of which Rule 1.9 is a part, replaced the Model Code of Professional Conduct, which was based on canons first promulgated in 1908. Monroe Freedman, *The*

10

> *Kutak Model Rules v. The American Lawyer's Code of Conduct*, 26 Vill. L. Rev. 1165 (1981); Kathleen Maher, *Keeping Up Appearances*, 16 Prof. Law. 1 (2005). The Rules were the product of the Kutak Commission, as it became known, formed in 1977 to assemble a set of governing rules for the profession. Freedman, *Kutak Model Rules*, at 1166. Some of the Model Rules, including Rule 1.9, explicitly rejected the old canons. Maher, *Keeping Up Appearances* (2002 revisions to Rule 1.9 deleted the lingering reference to "appearance of impropriety" originally housed in Canon 9 because it was "no longer helpful to the analysis of questions arising under this Rule"). The Kutak Commission's proposed Model Rules of Professional Conduct were issued in 1983 and then adopted by the states in the years that followed.

Watkins, 869 F.3d at 520. Wisconsin initially adopted the Model Rules on June 10, 1987. https://www.americanbar.org/groups/professional_responsibility/ publications/model_rules_of_professional_conduct/alpha_list_state_adopting_ model_rules/.

    D.    <u>Analysis</u>

        1.    *Timeliness*

A motion to disqualify should be "made with reasonable promptness after a party discovers the facts which lead to the motion." <u>Freeman Equipment v. Caterpillar, Inc.</u>, 262 F. Supp. 3d 631, 636 (N.D. Ill. 2017) (quoting <u>Weeks v. Samsung Heavy Indus. Co.</u>, 909 F. Supp. 582, 584 (N.D. Ill. 1996)).

The defendants removed the case from state court on February 9, 2022. Dkt. No. 1. The defendants' attorney, Warren Buliox, says that he reached out to Andrews the day before about the potential conflict of interest allegedly resulting from Andrews's representation of the plaintiff against Walmart. Dkt. No. 11 at ¶13. A little over a month later, the defendants first notified the court of their intention to file a motion to disqualify the plaintiff's counsel. Dkt. No. 8 at 3. The defendants filed their motion a week later, roughly a month and a

half after the case was removed to federal court. Dkt. No. 10. The court finds that the motion was timely filed, and the plaintiff has not argued otherwise.

### 2. *Attorney-Client Relationship*

Attorney Andrews concedes that he had an attorney-client relationship with Walmart while at MWH Law Group. Dkt. No. 15 at 4. He explains that he represented Walmart "in tort litigation matters including wrongful death, falling merchandise, and slip-and-fall cases inside and outside the store." Id. He also acknowledges that this case is "adverse to Walmart." Id. He acknowledges that Walmart has not provided a written consent for him to represent clients adverse to it. Id.

### 3. *The "Same or Substantially Related Matter"*

The plaintiff filed her complaint in Fond du Lac County Circuit Court on January 11, 2022, after Andrews had left MWH. Dkt. No. 1 at ¶1. The complaint alleges that the plaintiff slipped and fell inside a Fond du Lac Walmart store on July 18, 2020. Dkt. No. 1-2 at 6, ¶7. Defense counsel Buliox avers that Andrews's last day with MWH Law Group LLP was December 29, 2021 and that while Andrews still worked at MWH, his current firm—Dunk Law Firm—was "in negotiations with Walmart" on behalf of the plaintiff. Dkt. No. 11 at ¶¶10, 12.

Buliox avers that Andrews formerly represented Walmart in at least seventy-eight cases over nearly three years while working for MWH. Dkt. No. 11 at ¶4. Paiton Robertson, a paralegal with MWH, avers that in all seventy-eight cases, Andrews was retained to represent Walmart in Wisconsin. Dkt. No. 12 at ¶2. She avers that thirty-one of the cases involved "liquid on the floor" and that two occurred in the same Walmart store where the plaintiff alleges that she slipped and fell. Id.

12

Case 2:22-cv-00159-PP   Filed 08/23/22   Page 12 of 20   Document 29

The defendants included in their brief a detailed table of the thirty-seven premises liability cases Andrews handled on behalf of Walmart. Dkt. No. 18 at 8-16. Robertson avers that she compiled the table after personally reviewing the files of all of Andrews's cases at MWH. Dkt. No. 12 at ¶3.[1] The defendants argue that Andrews performed some combination of one or more of the following services in each of the cases: receiving privileged documents from Walmart, answering complaints, engaging in discovery and motions practice, participating in mediation, negotiating confidential settlements and submitting to Walmart numerous case evaluations and budgets. Dkt. No. 18 at 8-16. By the court's count, twenty of the cases listed in the chart involved a plaintiff who alleged that he or she had slipped and fallen due to liquid on the floor. Id. The defendants assert that Andrews received privileged documents from Walmart in one of these slip-and-fall cases as recently as December 2021, and that on December 22, 2021 he responded to a fourth set of requests for production of documents and produced confidential client documents. Id. at 13 (Janelle Mortiz v. Walmart, Case No. 20-cv-1429-BHL (E.D. Wis.)). The defendants allege that that same month, Andrews received privileged documents from Walmart in Lori Rutherford et al. v. Walmart, Inc., Case No. 21-cv-311-WCG (E.D. Wis.), another slip-and-fall case. Id. at 14.

Buliox avers that Andrews would have handled Walmart documents produced under a protective order and would have participated in the discovery process on behalf of Walmart. Dkt. No. 11 at ¶¶6, 8. Buliox believes that Andrews also would have "communicated extensively with Walmart's in-house

---

[1] The defendants' brief in support cites this table as "Exhibit A" to Robertson's declaration. Dkt. No. 18 at 16. Robertson's declaration refers to an "attached Exhibit A," dkt. no. 12 at ¶3, but no such exhibit is attached.

13

counsel to discuss litigation and settlement strategy, as well as the strengths and weaknesses in cases he handled for Walmart." Id. at ¶7.

In his own declaration, Andrews avers that he was employed as a Senior Associate Attorney at MWH from January 2019 to December 2021; among other things, he represented Walmart "in tort litigation, including wrongful death, falling merchandise, and slip-and-fall cases inside and outside the store." Dkt. No. 16 at ¶¶6, 8. While acknowledging that he had an attorney-client relationship with Walmart, Andrews avers that when he left MWH Law Group LLP, MWH retained all files and documents. Id. at ¶10. Andrews asserts that he was required to evaluate every case separately based on the relevant facts and that he worked on a range of cases "including cases involving wrongful death, falling merchandise, and slip-and-falls inside and outside of the store." Id. at ¶¶15-16. As for the plaintiff's case, Andrews avers that prior to and during his departure from MWH, the plaintiff's "claim was in the pre-litigation phase." Id. at ¶1. He avers that he did not have knowledge of the plaintiff's claim while he was at MWH and that during his time at MWH, he did not "handle Walmart cases in the pre-litigation phase." Id. at ¶¶1, 3. Regarding the specific store at which the plaintiff alleges she slipped and fell, Andrews avers that he participated in two cases involving that store—a "slip-and-fall that was dismissed without prejudice two (2) months after [he] began working at MWH Law Group that was primarily handled by another MWH Law Group attorney, and an irrelevant garnishment action." Id. at ¶4.

The defendants reply that the instant case is substantially related to those previously handled by Andrews because there "'is a substantial risk that confidential factual information as would normally have been obtained in the

prior representation would materially advance the client's position in a subsequent matter.'" Dkt. No. 18 at 7 (quoting Wis. SCR 20:1.9, ABA Cmt. 3).

Comment 2 to SCR 20:1.9 provides that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client . . . [unless] the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Andrews has said that he did not work on the plaintiff's case while at MWH and that he barely handled any cases regarding the specific store at which the plaintiff sustained her alleged injuries. Dkt. No. 16 at ¶¶1, 4. The parties agree, however, that Andrews received confidential information from Walmart during his time working at MWH. Andrews does not dispute that he was given access to privileged documents relating to Walmart, that he negotiated confidential settlements on behalf of Walmart and that he specifically worked on slip-and-fall cases for Walmart. He does not dispute that he attended Walmart's presentations hosted for outside counsel or that he frequently met with MWH attorneys and Walmart's in-house counsel in his role as one of Walmart's defense attorneys in premises liability lawsuits in Eastern Wisconsin. Andrews's level of involvement in representing Walmart on slip-and-fall cases, and the number of cases in which he did so, calls into question his argument that he has no "distinct knowledge about Walmart which is not otherwise known in the industry and/or known by plaintiff personal injury lawyers who have previously sued Walmart." Dkt. No. 15 at 4. He appears to have been so involved in representing Walmart in defending slip-and-fall cases

15

that that his representation can fairly be said to have been changing sides for the purposes of this litigation.

There is a substantial risk that Andrews obtained information about the defendants' confidential litigation strategies obtained through his representation of the defendants that would materially advance the plaintiff's position in this case. He has had access to the defendants' settlement pay ranges, payment thresholds, internal interests and motives and nonpublic information about store operations. Dkt. No. 11 at ¶5.

This knowledge is problematic because of the considerable factual overlap the case shares with many of those Andrews previously handled on behalf of the defendants. The present case involves a slip-and-fall claim against Walmart. Andrews' previous experience working on slip-and-fall cases on behalf of Walmart directly relates to this case. Almost no time passed between the end of Andrews's representation of the defendants and the beginning of his representation of the plaintiff. Cf. Watkins, 869 F.3d at 523 (affirming the district court's decision that "the passage of time had removed any substantial risk that any confidential information from [ten] years ago might advance Watkin's litigation."); SCR 20:1.9, ABA Cmt. 3 ("Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related."). Andrews's knowledge of the defendants' policies and practices in defending slip-and-fall cases in Wisconsin goes beyond a general understanding. He has knowledge of specific numbers, tactics, interests and operations relevant to the defendants' defense.

The plaintiff's reliance on the Nevada district court's decision in Stevens v. Wal-Mart, 2018 WL 2766876, is misplaced. The plaintiff is correct that in

Stevens, the court concluded that the movant had failed to show that the cases were substantially related and, instead, had argued that the cases the plaintiff's counsel had worked on previously were generically similar to the Stevens' case. Id. at *9. That court concluded the defendant had offered only "a generic description of [plaintiff's counsel's] prior representation of Wal-Mart [that] does not show similarity or superficial resemblance, let alone substantial similarity." Id. In contrast, the defendants in the present case have offered a detailed explanation of the specific type of personal injury cases Andrews had worked on for Walmart during his time at MWH in comparison and compared them to the facts of the present case. Dkt. No. 18 at 8-16. The court has found those facts to be very similar.

Similarly, the plaintiff argues that ABA Comment 3 to SCR 20:1.9 provides that "[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." That is correct, but the comment goes further. It provides that "on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." The court has concluded that in representing Walmart in multiple slip-and-fall cases in Wisconsin, there is a strong likelihood that Andrews obtained knowledge of specific facts—litigation and settlement strategy, confidential internal documents, information from training sessions— that is relevant to this slip-and-fall case.

Finally, the plaintiff argues that Wisconsin does not recognize the "playbook approach." Dkt. No. 15 at 16. The plaintiff relies on Plein, 463 P.3d at 737. Id. The plaintiff insists that "[t]he *Plein* case makes clear that for matters to be substantially related they must be factually related," and that the

17

fact that counsel previously had access to the defendants' "playbook" does not prohibit representation adverse to the defendants without such a factual relation. Id.

The plaintiff has offered no Wisconsin law or federal law from the Seventh Circuit to support this argument. Nor have the defendants taken the so-called "playbook approach" in this case. Buliox averred that Andrews had gained "intimate knowledge" of the defendants' case management guidelines, settlement pay ranges, "proclivities," litigation strategies, negotiation strategies, hierarchies in settlement authority and non-public information about store operations, as well as confidential internal documents. Dkt. No. 11 at ¶¶5, 8. That information is more detailed and case-specific than simply the strategies that a retail store might take in tort litigation.

Andrews' previous representation of the defendants provided him with confidential, material information that prohibits him from representing the plaintiff in the substantially related matter. The court concludes that although Andrews did not represent Walmart in the plaintiff's case, the plaintiff's case is a "substantially related matter" to the other slip-and-fall cases in which Andrews has represented Walmart. SCR 20:1.9 prohibits Andrews from representing the plaintiff against Walmart in a substantially related case; he must be disqualified.

4.  *Presumption of Shared Confidences*

The court must also determine whether the Dunk Law Firm should be disqualified from the case. Andrews's representations of Walmart in prior slip-and-fall cases are substantially related to this slip-and-fall case against Walmart; there is a presumption of shared confidences. Nelson, 823 F. Supp. at 1451. This presumption is rebuttable, however, because only one attorney

18

Case 2:22-cv-00159-PP    Filed 08/23/22    Page 18 of 20    Document 29

has switched from the law firm representing the defendants to the law firm representing the plaintiff. See Shiessle, 717 F.2d at 420 n.2.

The court has determined that Andrews was privy to confidential information during his previous representation of Walmart. The remaining question is whether the plaintiff has rebutted the presumption with respect to Andrews's current representation of the plaintiff.

Essentially, "the court must determine whether the knowledge of the 'confidences and secrets' of [Walmart] which [Andrews] brought with him has been passed on to or is likely to be passed on to the members of the [Dunk Law Firm]." Id. at 421. The Dunk Law Firm's web site indicates that there are seven attorneys on the Milwaukee personal injury "team," including Andrews. https://www.slamdunklawyer.com/milwaukee/attorneys/. It is a small group of lawyers. The plaintiff has done nothing to rebut the presumption that he has passed on information he learned from his representations of Walmart in slip-and-fall cases to other members of this small team. The plaintiff has not demonstrated, or even asserted, that Andrews has firewalled himself from other lawyers in the firm or other staff, or that in the months since he joined Dunk Law Firm, he has not passed on information about his experience representing Walmart in slip-and-fall cases to other lawyers or staff at the firm.

Accordingly, the Dunk Law Firm must be disqualified from representing the plaintiff.

### III. Defendants' Motion for Leave to File Supplemental Brief (Dkt. No. 24)

Two and a half months after the defendants' motion to disqualify had been fully briefed, the defendants asked leave to file a supplemental brief, arguing that the Dunk Law Firm since had hired the legal assistant who had been working on the plaintiff's case at MWH. Dkt. No. 24. The plaintiff filed a

19

brief expressing vehement opposition to this motion. Dkt. No. 25. When the court did not rule right away, Andrews filed a letter opining that the issue required oral argument and asking the court to schedule it. Dkt. No. 28.

The court will deny the defendants' motion for leave to file a supplemental brief; it has determined based on the original briefing that both Andrews and Dunk Law Firm must be disqualified from representing the plaintiff. Nor does the court agree that there is a need for a hearing.

## IV. Conclusion

The court **GRANTS** the defendants' motion to disqualify attorney Andrews and Dunk Law Firm, PLLC. Dkt. No. 10.

The court **DENIES AS MOOT** the defendants' motion for leave to file a supplemental brief in support of their motion to disqualify plaintiff's counsel. Dkt. No. 24.

The court **DENIES** Attorney Andrews's letter request for a hearing. Dkt. No. 28.

Dated in Milwaukee, Wisconsin this 23rd day of August, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**